UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

WILLIAM DEAN BAKER,

        Plaintiff,         Case No. 1:07-cv-4

v.         Honorable Paul L. Maloney

DONNA VANDERARK et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Since this action is a refiling of two previous actions "that [were] initially dismissed without prejudice for failure to exhaust under the [Prison Litigation Reform Act]", Plaintiff need not pay an additional filing fee under 28 U.S.C. § 1914(a).[1] *Owens v. Keeling*, 461 F.3d 763, 772-73 (6th Cir. 2006); *see also* Feb. 13, 2007 order, docket #5. On January 31, 2007, this Court ordered service of Plaintiff's complaint on Defendants Donna Vanderark, Daniel Spitters, Jeremy Wesneski[2], William Nelson, Helen Thompson and Correctional Medical Services, Inc. (CMS).

On March 19, 2007, Defendants Nelson and CMS filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) because of Plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) (docket #13). On March 27, 2007,

---

[1] Plaintiff filed two previous lawsuits, *Baker v. Vanderark,* No. 1:05-cv-550 (W.D. Mich. Sept. 19, 2005) and *Baker v. Corr. Med. Serv., Inc.*, No. 1:06-cv-18 (W.D. Mich. Apr. 28, 2006), which were both dismissed because Plaintiff failed to exhaust his available administrative remedies.

[2] It is unclear from the pleadings whether Defendant's last name is spelled Wisneski or Wesneski. The Court spelled Defendant's last name as Wesneski for purposes of this Report and Recommendation.

Defendants Spitters and Wesneski also filed a motion to dismiss pursuant to Rule 12(b)(6) on exhaustion grounds (docket #16). On April 4, 2007, Defendant Vanderark filed a motion to dismiss based on Plaintiff's failure to exhaust his available administrative remedies (docket #20). Plaintiff filed a response to Defendants Nelson, CMS, Spitters, Wesneski and Vanderark's motions to dismiss on April 19, 2007 (docket #21). On April 26, 2007, Defendants Nelson, CMS, Spitters, Wesneski and Vanderark filed a reply to Plaintiff's response (docket #23). On May 24 and July 16, 2007, Plaintiff filed responses to Defendants Nelson, CMS, Spitters, Wesneski and Vanderark's April 26 reply (docket ##31, 35).

In an order dated June 25, 2007, this Court converted Defendants Nelson, CMS, Spitters, Wesneski and Vanderark's motions to dismiss to motions for summary judgment under Federal Rule of Civil Procedure 56 (docket #33). Defendants Nelson, CMS, Spitters, Wesneski and Vanderark filed a supplement (docket #34) in response to this Court's June 25 order on July 2, 2007. Upon review, I recommend that Defendants Nelson, CMS, Spitters, Wesneski and Vanderark's motions for summary judgment be denied.

### **Applicable Standard for Summary Judgment**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire*

*& Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility

> considerations . . . .  [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

### **Facts**

Plaintiff is presently incarcerated at the Marquette Branch Prison, but the events giving rise to this action occurred while he was incarcerated at the West Shoreline Correctional Facility (MTF). In his *pro se* complaint, he sues the following MTF employees: Physician Assistants Donna Vanderark and Daniel Spitters, Registered Nurse Supervisor Helen Thompson, Doctors Jeremy Wesneski and William Nelson, and CMS.

On May 20, 2004, Plaintiff sustained an abdominal injury. The Michigan Department of Corrections (MDOC) subsequently x-rayed Plaintiff's injury. When Defendant Spitters evaluated the x-ray, he found the x-ray to be normal. Sometime between June 1 and September 8, 2004, Defendant Spitters diagnosed Plaintiff with a torn lower abdominal muscle but did not prescribe any treatment. On September 26, 2004, Plaintiff submitted a medical kite to health services because his injury had become worse, making it difficult to walk. He also experienced pain in his left arm and numbness in his left hand and fingers. Plaintiff believed that he was suffering from a hernia. Defendant Spitters evaluated Plaintiff again but denied that Plaintiff had a hernia. In October 2004, the MDOC transported Plaintiff to the emergency room because he was "bent over in pain."

(Compl. at 5[3]; docket #1.)  While Plaintiff received a computerized tomography (CT) scan at the hospital, the results were normal.

Plaintiff submitted several medical kites to health services from October 2004 to January 2005.  Defendants Wesneski, Vanderark and Thompson evaluated Plaintiff on numerous occasions but they could not find the origin of Plaintiff's pain.  Defendant Wesneski ultimately prescribed Indocin for Plaintiff's pain.  After submitting a medical kite on January 15, 2005, Plaintiff also complains that he had to wait until April 29, 2005, three and one-half months, to see health services.  On April 29, 2005, Defendant Vanderark evaluated Plaintiff.  At that time, Plaintiff hoped that "someone someday will diagnosis my problem."  (Compl. at 5.)  Defendant Vanderark replied "when are you going home? . . . maybe you will get something done then."  (*Id.*)

On June 13, 2005, the MDOC transported Plaintiff to the hospital for intense chest pain, where he was given another CT scan.  Although the CT scan did not determine the origin of Plaintiff's pain, the emergency room physician recommended that Plaintiff see a specialist. Sometime between June 13 and July 14, 2005, Defendant Nelson evaluated Plaintiff and suggested that Plaintiff may have a "strange type of hernia."  (Compl. at 6.)  He requested that Plaintiff see a surgeon but that request was subsequently denied.  On May 24, 2007, Plaintiff states that the MDOC finally diagnosed him with having a hernia.  (*See* Pl.'s Answer to Defs. Reply at 4-5; docket #31.)

Plaintiff submitted four grievances for his medical claims to the MDOC.  In Grievance No. MTF-04-09-00533-12D2 filed September 22, 2004, Plaintiff claims that health services refused to treat his hernia.   (Ex. D to Defs.' Reply; docket #23.)  Plaintiff appealed his

---

[3] The Court will use the page numbers assigned by CM/ECF for all of Plaintiff's filings for clarity because Plaintiff did not number the pages in his filings.

grievance to Step III.[4] (*Id.*) Plaintiff, however, failed to identify any of the Defendants in Grievance No. MTF-04-09-00533-12D2. (*See id.*) On April 30, 2005, Plaintiff filed Grievance No. MTF-05-05-00210-28AB against Defendant Vanderark for negligently diagnosing Plaintiff with irritable bowel syndrome. (Ex. C to Defs.' Reply; docket #23.) Plaintiff only filed the grievance at Step I. In the Step I response, the Respondent stated that the issue was duplicative of MTF-004-09-00533-12D2. (*Id.*) Plaintiff did not appeal the grievance to Steps II and III. (*See id.*)

On May 9, 2006, Plaintiff filed Grievance No. MTF-06-05-00278-012D against Defendants Spitters, Wesneski, Vanderark, Nelson, Thompson and "M.S.P." for improper treatment of his abdominal injury. (Ex. B to Defs.' Reply; docket #23.) Plaintiff appealed Grievance No. MTF-06-05-00278-012D through the three-step grievance process, however, the Step II and Step III Grievance Respondents stated that his grievance was untimely. (*Id.*) On September 25, 2006, Plaintiff filed Grievance No. MTF-06-09-00702-12D14 against Defendants Nelson and CMS for his medical claims and an alleged assault by Defendant Nelson to Steps I and II. (Attach. to Pl.'s Compl. at 12-15.) He did not appeal the grievance to Step III. (*See id.*)

For relief, Plaintiff requests to see a specialist, the Court to investigate CMS and its staff, and to hold Defendants responsible for "all bills and charges in this matter as well as the pain, suffering and mental anguish [that] I am going through." (Compl. at 7.)

**Discussion**

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner

---

[4]The Step III grievance response notes the Grievance Identifier as MTF-04-09-20533-12D2 rather than MTF-04-09-00533-12D2. For purposes of this Report and Recommendation, the Court will refer to the grievance as Grievance No. MTF-04-09-00533-12D2. (Ex. D to Defs.' Reply; docket #23.)

bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[5] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being

---

[5]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

Defendants argue that Plaintiff failed to exhaust his available administrative remedies because (1) Grievance No. MTF-04-09-00533-12D2 was untimely and failed to name any Defendants; (2) Grievance No. MTF-05-05-00210-28AB was duplicative of Grievance No. MTF-04-09-00533-12D2 and Plaintiff did not pursue the grievance beyond Step I of the three-step grievance process; (3) Grievance No. MTF-06-05-00278-012D was untimely and duplicative of earlier grievances; and (4) Grievance No. MTF-06-09-00702-12D14 was duplicative of earlier grievances. (Defs. Nelson & CMS' Mot. to Dismiss at 5-6, docket #13; Defs. Wesneski & Spitters' Mot. to

Dismiss at 5-6, docket #16; Def. Vanderark's Mot. to Dismiss at 5-6, docket #20; Defs. Reply at 2-3, docket #23.) Defendants Nelson, Vanderark, Wesneski and Spitters also argue that Plaintiff's grievances failed to allege sufficient facts involving the issues being grieved in accordance with MDOC Policy Directive 03.02.130, ¶ T. (*Id*.) "Dates, times, places and names of all those involved in the issue being grieved are to be included." (Defs. Reply at 2, docket #23) (citing MICH. DEP'T OF CORR., POLICY DIRECTIVE 03.02.130, ¶ T.) Defendants finally argue that under *Jones,* 127 S. Ct. 910, Plaintiff is not excused from following the MDOC grievance policy, which requires him to name the Defendants in a grievance. (Defs. Reply at 1-2, docket #23.)

In his response to Defendants' arguments, Plaintiff argues that he exhausted his medical claim in Grievance No. MTF-04-09-00533-12D2 even though he did not specifically name any of the Defendants in the grievance. Plaintiff alleges that the United States Supreme Court held in *Jones,* 127 S. Ct. 910, that Michigan inmates "are not required to state specific names because nothing in the Michigan prison policy requires an individual [to] be named in an administrative grievance." (Pl.'s Rebuttal to Defs. Mot. to Dismiss at 2; docket #21.) For Grievance No. MTF-06-05-00278-012D, Plaintiff asserts that he followed this Court's April 28, 2006 opinion in Case No. 1:06-cv-18 (W.D. Mich.), which stated "even if the Michigan Department of Corrections considers a subsequent grievance to be untimely, a prisoner who has presented a grievance through one complete round of the prison process will nevertheless be deemed to have exhausted available administrative remedies as required by 42 U.S.C. [§] 1997e(a)." (*Id.* at 3.) In Grievance Nos. MTF-04-09-00533-12D2 and MTF-06-05-00278-012D, Plaintiff also argues that those grievances are timely because the "date of incident" on the grievance form relates only to the date that he first filed a medical kite for his abdominal injury. (Pl.'s Answer to Defs. Reply at 4; docket #31.)

As stated above, the Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust the administrative remedies available to him or her before bringing a claim under Section 1983. 42 U.S.C. § 1997e(a). The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement mandates "proper exhaustion." "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances, and is a precondition to any suit challenging prison conditions. *Id.* at 2386-388. Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred. The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion." To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23. The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26. Finally, the *Jones* Court overturned the Sixth Circuit's

requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.*

In his complaint, Plaintiff referenced four separate grievances, each of which is discussed below.

### A. Grievance No. MTF-04-09-00533-12D2

In Grievance No. MTF-04-09-00533-12D2, Plaintiff argues that health services refused to treat his abdominal injury. While Plaintiff appealed the grievance to Step III, he failed to name any Defendants in the grievance form. A Step I response was issued on October 6, 1994, which addressed Plaintiff's grievance on the merits, and denied it because Plaintiff received the "proper medical attention per PD-03.04.100, Health Services in a timely manner." (Ex. A to Pl.'s Rebuttal to Defs. Mot. to Dismiss; docket #21.) Plaintiff then appealed his grievance to Step II. The Step II response, on January 9, 2005, stated "[t]he time frame for response to your grievance has elapsed. In accordance with PD/OP 03.02.130, your grievance may be filed to the next step." (Ex. B to Pl.'s Rebuttal to Defs. Mot. to Dismiss; docket #21.) Plaintiff finally appealed his grievance to Step III. On April 1, 2005, the Step III response addressed the grievance again on the merits and denied it. (Ex. C to Pl.'s Rebuttal to Defs. Mot. to Dismiss; docket #21.) The Step III response upheld the Step I response and noted:

> [r]eview of the record and information presented upon appeal to Step III indicates that this issue was appropriately addressed at Step I. Since that response was prepared grievant has had diagnostic testing performed. All have been negative for the condition he believes he has. Grievant's filing of this grievance and continuation of it in essence is a request for a second medical opinion. The state does not allow for second medical opinions at taxpayer expense.

> Grievant has the option to seek a second medical opinion on his own at no cost to the Department. In order to exercise this option, he is referred to PD 04.06.135 for guidance.

(*Id.*)

Defendants argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants in his grievance. (Defs. Reply at 1-2, docket #23.) As noted by the Supreme Court in *Jones*, "[t]he PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a) but nothing in the statute imposes a 'name all defendants' requirement for grievances . . . ." *Jones*, 127 S. Ct. at 922. *See also Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (finding that exhaustion, according to *Jones*, 127 S. Ct. at 923, is not "*per se* inadequate simply because a defendant was not named in the grievances"). In order to properly exhaust administrative remedies, prisoners must merely comply with the prison grievance procedures available to them. *Jones*, 127 S. Ct. at 922-23. Thus, "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that defines the boundaries of proper exhaustion. *Id*. at 923.

In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion.[6] This version of the MDOC Policy Directive states: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of

---

[6]Plaintiff argues that the *Jones* Court held that he is not required to name the Defendants in his grievance for proper exhaustion. *See Jones,* 127 S. Ct. at 923 ("As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.") The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The record reflects that the MDOC did not reject or deny Plaintiff's Grievance No. MTF-04-09-00533-12D2 in a Step I, II or III response under MDOC Policy Directive 03.02.130, ¶ T for failure to name those persons being grieved; rather, the MDOC addressed the grievance on the merits.

> As the *Woodford* Court noted:
>
> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted). "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis added)). In this case, the MDOC apparently found that Plaintiff properly exhausted his medical claim, even though he did not name any Defendants in his grievance contrary to MDOC Policy Directive 03.02.130, because it addressed his grievance on the merits. The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits. When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules. *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly."). Since Plaintiff's Grievance No. MTF-04-09-00533-12D2 was properly exhausted

as to his medical claim against all of the Defendants[7], Defendants' motions for summary judgment should be denied.   Plaintiff's remaining grievances, Grievance Nos. MTF-05-05-00210-28AB, MTF-06-05-00278-012D and MTF-06-09-00702-12D14, are unexhausted as follows.

## B.     **Grievance No. MTF-05-05-00210-28AB**

On April 30, 2005, Plaintiff filed Grievance No. MTF-05-05-00210-28AB against Defendant Vanderark for negligently diagnosing Plaintiff with irritable bowel syndrome. (Ex. C to Defs.' Reply; docket #23.)  Plaintiff appealed Grievance No. MTF-05-05-00210-28AB only to Step I.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved in writing . . . ."  MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶U.  As Plaintiff did not appeal Grievance No. MTF-05-05-00210-28AB through the three-step grievance process within ninety days, Plaintiff did not comply with the MDOC's procedural rules as required in *Woodford*.  *See Woodford*, 126 S. Ct. at 2386.  The Sixth Circuit has also held that a plaintiff must pursue all levels of the administrative procedure before filing an action in federal court.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."); *see also Pearson v. Sapp*, No. 99-6182, 2000 WL 1459827, at *2 (6th Cir. Sept. 19, 2000) ("Even though Pearson did file an initial grievance at the institutional level, he failed to exhaust his available remedies by pursuing an appeal of the grievance rejection to the next levels as provided by the applicable Corrections Policy

---

[7]As the MDOC did not deny Plaintiff's grievance in accordance with MDOC Policy Directive 03.02.130, ¶ T, for failure to name any Defendants in his grievance, then this Court must assume that Plaintiff exhausted his grievance against all of the Defendants in his civil action.

and Procedure.")  Therefore, Plaintiff did not properly exhaust Grievance No. MTF-05-05-00210-28AB.

Further, the Step I Respondent rejected Plaintiff's Grievance No. MTF-05-05-00210-28AB because it was duplicative of MTF-004-09-00533-12D2.  MDOC Policy Directive 03.02.130, ¶G states that a grievance may be rejected when it is "vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." Because Plaintiff failed to comply with this procedural rule, he did not properly exhaust his administrative remedies against Defendants in Grievance No. MTF-05-05-00210-28AB.  *See Woodford,* 126 S. Ct. at 2386; *see also Kinard v. Rubitschun,* No. 2:05-cv-74131, 2007 WL 655309, at *8 (E.D. Mich. Feb. 27, 2007).

### C. **Grievance No. MTF-06-05-00278-012D**

On May 9, 2006, Plaintiff filed Grievance No. MTF-06-05-00278-012D against Defendants Spitters, Wesneski, Vanderark, Nelson, Thompson and "M.S.P."[8] for improper treatment of his abdominal injury.  (Ex. B to Defs.' Reply; docket #23.)  Plaintiff appealed Grievance No. MTF-06-05-00278-012D through the three-step grievance process, however, the Step II and Step III Respondents stated that his grievance was untimely.  The incident date in Plaintiff's Step I grievance covered approximately a two-year period, May 20, 2004 to May 1, 2006.  (*Id.*)  The date of Plaintiff's Step I grievance was May 9, 2006.  (*Id.*)  Plaintiff argues that he only used the incident date of May 20, 2004 because it was the date that he first filed his medical kite regarding his abdominal injury.  Regardless, Plaintiff's last attempt to resolve the issue was on May 1, 2006, eight

---

[8]As the Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), this Court assumes Plaintiff's reference to M.S.P., i.e. Medical Service Provider, implicates Correctional Medical Services, Inc..

days prior to filing his Step I grievance on May 9, 2006. Pursuant to *Woodford,* Plaintiff failed to "properly" exhaust his available administrative remedies because he did not comply with the procedural rules of the prison grievance policy when he filed his grievance eight days after the alleged incident occurred. *See Woodford,* 126 S. Ct. at 2386. MDOC Policy Directive 03.02.130, ¶ X expressly establishes a five-day time period for filing a grievance after attempting to resolve a grievable issue with staff.

Plaintiff also argues that he followed this Court's opinion in Case No. 1:06-cv-18 (W.D. Mich. Apr. 28, 2006), which stated "even if the Michigan Department of Corrections considers a subsequent grievance to be untimely, a prisoner who has presented a grievance through one complete round of the prison process will nevertheless be deemed to have exhausted available administrative remedies as required by 42 U.S.C. § 1997e(a)." (Pl.'s Rebuttal to Defs. Mot. to Dismiss at 3; docket #21.) This Court's April 28, 2006 opinion in Case No. 1:06-cv-18 was premised upon Sixth Circuit precedent existing at the time the complaint was filed. *See Thomas v. Woolum,* 337 F.3d 720, 733 (6th Cir. 2003). On June 22, 2006, the United States Supreme Court decided *Woodford,* 126 S. Ct. 2378, and specifically reversed the aforementioned Sixth Circuit precedent. *Woodford,* 126 S. Ct. at 2384. The *Woodford* Court held that the PLRA requires "proper exhaustion," such that a plaintiff must comply with the MDOC's deadlines, including the time limits for filing grievances. *Woodford,* 126 S. Ct. at 2386-388. Therefore, Plaintiff failed to exhaust his administrative remedies for Grievance No. MTF-06-05-00278-012D.

        D.    **Grievance No. MTF-06-09-00702-12D14**

On September 25, 2006, Plaintiff filed Grievance No. MTF-06-09-00702-12D14 against Defendants Nelson and CMS for his medical claims and an alleged assault by Defendant

Nelson. (Attach. to Pl.'s Compl. at 12-15.) Plaintiff only appealed the grievance to Steps I and II. Since Plaintiff did not appeal Grievance No. MTF-05-05-00210-28AB through the three-step grievance process within ninety days, Plaintiff did not comply with the MDOC's procedural rules as required in *Woodford*. *See Woodford*, 126 S. Ct. at 2386; MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶U ("The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved in writing . . . ."). As stated above, the Sixth Circuit has also held that a plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman*, 196 F.3d at 645; *see also Pearson*, 2000 WL 1459827, at *2. Accordingly, Plaintiff failed to exhaust his administrative remedies for Grievance No. MTF-06-09-00702-12D14.

## Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket ##13, 16, 20) be denied.

Date: September 24, 2007         /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).