UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM DEAN BAKER,
        Plaintiff,

-v-

DONNA VANDERARK, DANIEL
SPITTERS, JEREMY WESNESKI,
WILLIAM NELSON, HELEN
THOMPSON and CORRECTIONAL
MEDICAL SERVICES, INC.,
        Defendants.

Case No. 1:07-cv-004

HONORABLE PAUL L. MALONEY

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OVER OBJECTIONS

Plaintiff Baker, a prisoner under the control of the Michigan Department of Corrections (MDOC), filed a § 1983 action. The lawsuit was referred to the Honorable Ellen Carmody, United States Magistrate Judge. On September 24, 2007, the Magistrate Judge issued the Report and Recommendation (Dkt. No. 36) that is now before this Court.

On March 19, 2007, Defendants William Nelson and Correctional Medical Services (CMS) filed a Motion to Dismiss for failing to exhaust administrative remedies (Dkt. No. 13) . On March 27, 2007, Defendants Daniel Spitters and Jeremy Wesneski filed a Motion to Dismiss for failing to exhaust administrative remedies (Dkt. No. 16) . On April 4, 2007, Defendant Donna Vanderark filed a Motion to Dismiss for failure to exhaust administrative remedies (Dkt. No. 20) . Plaintiff filed a response (Dkt. No. 21) to the three motions to dismiss. Defendants collectively filed a reply (Dkt. No. 23) to Plaintiff's response.[1] On June 25, 2007, the Magistrate Judge issued an order (Dkt. No.

---

[1] Defendants Nelson, CMS, Spitters, Wesneski, and Vanderark are represented by the same attorney. This group will be referred to as "Defendants." Defendant Helen Thompson has also filed a motion for summary judgment which is not at issue here. Defendant Thompson filed

33) converting the motions to dismiss to Rule 56 Motions for Summary Judgment.

In the report, the Magistrate Judge recommends denying the three motions for summary judgment, finding that Plaintiff exhausted his available administrative remedies in one of his grievances. On September 26, 2007, Defendants filed an objection (Dkt. No. 37) to the Report and Recommendation (R&R). On September 28, 2007, Defendant Thompson filed objections to the R&R (Dkt. No. 40). Plaintiff has not filed any objection to the R&R and the time for filing objections has expired.

I. STANDARD OF REVIEW

After being served with a Report and Recommendation issued by a Magistrate Judge, a party has ten days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). The United States Supreme Court has held that the statute does not "positively require[] some lesser review by the district court when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *Sullivan*, 431 F.3d

---

an objection to the R&R. Ms. Thompson will be separately referred to as "Defendant Thompson."

at 984. *See also Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice). The district court judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b).

This Court conducted a de novo review. Having read the file, including the report, recommendations and relevant authority, the Report and Recommendation is adopted over the objections.

II. ISSUE

    A. Factual Background to the Complaint.

Plaintiff complains he suffered an abdominal injury sometime in the middle of 2004. Plaintiff sought medical attention on several occasions between May 2004 and September 2004. On September 22, 2004, Plaintiff submitted a grievance , MTF 04-09-533-12D2. (Attachment to Plaintiff's Response, Dkt. No. 21-2; Exhibit D to Defendants' Reply, Dkt. No. 23-6). The grievance does not identify any particular person as the source of Plaintiff's complaint. The form does not direct a prisoner to identify the person against whom the grievance is filed. The form has two areas for a prisoner to explain his or her grievance. First, the prisoner is asked "[w]hat attempt did you make to resolve this issue prior to writing this grievance? On what date?" Second, the prisoner is asked to describe the problem clearly. The form states "the grievance must be submitted to the Grievance Coordinator in accordance with the limits of OP 03.02.130." Plaintiff wrote he is in a lot of pain and has been asking to be sent to the hospital because the people in health services have not been able to help him. (*Id.*).

As part of the grievance process, Plaintiff was interviewed on October 6, 2004. On September 29, prior to being interviewed for the grievance, Plaintiff was seen by a physician's

assistance who found no signs or symptoms of a hernia. As a result, Plaintiff's grievance was dismissed because he "received proper medical attention per PD-03.04.100, Health Services in a timely manner." (*Id.*). The grievance was returned to Plaintiff along with a form directing him to file a Step II appeal by November 1, 2004. (*Id.*).

Although Plaintiff wrote that he placed the form in the prison mailbox on October 30, 2004 (a Saturday), the Grievance Coordinator indicates on the form that it was not received until November 2, 2004 (a Tuesday). (*Id.*). The form was returned to Plaintiff on January 9, 2005[2] explaining "the time frame for response to your grievance has elapsed." (*Id.*). Plaintiff filed his Step III appeal later that day. The Step III grievance appeal was denied on July 1, 2005 because the "issue was appropriately addressed at Step I. Since that response was prepared grievant has had diagnostic testing performed. . . . Grievant's filing of this grievance and continuation of it in essence is a request for a second medical opinon. The state does not allow for second medical opinions at taxpayer expense." (*Id.*).

In August 2005, Plaintiff filed a § 1983 action based on grievance MTF-04-09-533-12D2. (Case No. 1:05-cv-550). The district court judge dismissed the action without prejudice on September 19, 2005 under the prevailing case law of the Sixth Circuit Court of Appeals. Finding that Plaintiff failed to establish that he exhausted his administrative remedies, the district court judge explained Plaintiff failed to provide documentary evidence of his grievance and appeals, failed to specifically describe the issues raised in the grievance and failed to identify the parties named in the grievance.

Plaintiff filed a second § 1983 action based on the same grievance in January 2006. (Case

---

[2]The form incorrectly states January 9, 2004.

No. 1:06-cv-18). This time, Plaintiff attached a copy of the grievance and the appeals paperwork to his complaint. Plaintiff also attached a copy of a second grievance, MTF 05-05-210-28AB which had been filed with a Grievance Coordinator on April 30, 2005. The second grievance was rejected by the Grievance Coordinator as duplicative of grievance MTF 004-09-533-12D2. The explanation provided to Plaintiff was that the first grievance had been

> filed and denied through Step III of the grievance process. The prisoner's claim that he did not request to be seen by an MSP is false. On 1-15-05 he requested to be seen claiming abdominal pain since 5/04. On 1-16-05 he was seen by a nurse and it was determined it was not an emergent/urgent matter and he was placed on the waiting list to see an MSP. When he was seen on 4-29-05 by PA Vanderark it was because of his own request from January. There is nothing retaliatory in this action and it is in compliance with PD 03.04.100, Health Services, and PD 03.04.101, Prisoners Health Care Copayment. Filing duplicative grievances or otherwise rejectable grievances may result in your placement on Modified Access to the prisoner grievance process.

The district judge again dismissed the action without prejudice. The judge found Plaintiff failed to exhaust the available administrative remedies. Specifically, under the then prevailing law of the Sixth Circuit, Plaintiff failed to name Defendants in Step I of the grievance procedure for grievance MFT 04-09-533-12D2. Plaintiff also failed to provide copies of his Step II or Step III appeal of grievance MTF-05-05-210-28AB or to describe in sufficient detail his appeals of that grievance.

Plaintiff filed this § 1983 action on January 3, 2007, based largely on subsequent attempts to receive medical care for the same injury. Plaintiff alleges deliberate indifference to his medical condition based upon denial of access to competent medical personnel. Plaintiff's complaint identifies three grievance forms: (1) MTF 05-05-210-28AB, (2) MFT 06-05-2708-12D, and (3) MTF 06-09-702-12D14.

Defendants' motions generally allege the three grievances identified in Plaintiff's complaint did not properly exhaust the available administrative remedies. Defendants' allege grievance MFT

06-05-2708-12D duplicated a prior grievance and, although was appealed through Step III, was ultimately denied because it was untimely. Defendants allege grievance MTF05-05-210-28AB duplicated a prior grievance. Defendants allege MFT06-09-702-12D14 also duplicated a prior grievance. Defendants identify MTF-04-09-0053-12D2 as the prior grievance.

In his response to the motions to dismiss, Plaintiff informs this Court about the prior action and submitted grievance form MFT 04-09-0053-12D2 as an exhibit. Plaintiff argues he is no longer required to specifically identify parties at the initial grievance stage, citing *Jones. v. Bock*. Plaintiff further argues a grievance that was not timely filed might still exhaust administrative remedies, citing *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003).[3]

B. Report and Recommendation

The Magistrate Judge found Plaintiff did not exhaust his administrative remedies regarding the three grievances identified in the complaint. No party objects to this conclusion. For the reasons outlined in the R&R and because no party has objected to the conclusion, this Court accepts that Plaintiff failed to exhaust his administrative remedies for grievances MFT 06-05-2708-12D , MTF 05-05-210-28AB, and MFT 06-09-702-12D14.

However, the Magistrate Judge recommended denying the three motions for summary judgment filed by Defendants (R&R at 2). Specifically, the Magistrate Judge concluded Plaintiff did exhaust his administrative remedies regarding the grievance that was the subject of the prior two lawsuits, MTF-04-09-533-12D2. The Magistrate Judge found that Step I and Step III of the grievance process denied the grievance on the merits rather then on any procedural ground such as failure to identify specific parties or failure to timely file the grievance or appeal. (*Id.* at 11). The

---

[3]The relevant rule of law in *Thomas* was overruled by *Woodford v. Ngo*, 126 U.S. 2378 (2006).

Magistrate Judge held, under the Supreme Court precedent, Plaintiff was not required to specifically identify all defendants during the grievance process. The Magistrate Judge concluded, because MDOC addressed the grievance on the merits it "apparently found that Plaintiff properly exhausted his medical claim." (*Id.* at 13). All Defendants object to this conclusion.

III.  ANALYSIS

The Prison Litigation Reform Act (PLRA) of 1995 provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, in order to file an action, a prisoner must have properly exhausted the administrative remedies that are available. *Woodford v. Ngo*, 126 S.Ct 2378, 2387 (2006). The Court explained, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2385. The level of detail necessary in a grievance to comply with the grievance procedures will vary depending on the nature of the claim and the requirements of the prison. *Jones v. Bock*, 127 S.Ct. 910, 923 (2007).

The *Woodford* Court described the doctrine of proper exhaustion in Administrative law; as "a general rule . . . [,] courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Id.* at 2385 (quoting *United States v. L.A. Tucker Truck Lines, Inc.* 344 U.S. 33, 37 (1952)). In the cases cited by the Supreme Court, the doctrine justifies the requirement that objections be made during administrative proceedings on the grounds that the administrative agency

should be afforded an opportunity to correct the problem before the issue is reviewed by a court. *L.A. Tucker Truck Lines*, 344 U.S. at 37. *See also Sims v. Apfel,* 530 U.S. 103, 108 (2000) (holding where an agency's regulations require issue exhaustion, an objection not raised will not be considered by a court); *Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946) ("[t]he responsibility of applying the statutory provisions to the facts of the particular case was given in the first instance to the Commission. A reviewing court usurps the agency's function when it sets aside an administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."); *Hormel v. Helvering*, 312 Us. 552, 556-557 (1941).

In addition to finding that the text of the PLRA supported relying on the proper exhaustion doctrine, the Court justified using the doctrine because it fit with the general scheme of the PLRA. *Id.* at 2387. Proper exhaustion serves the PLRA goals of (1) limiting federal court interference with the administration of prisons, (2) affording officials time and opportunity to address complaints internally before the initiation of a federal lawsuit, and (3) reducing the quantity and improving the quality of prisoner suits. *Id.* The Court rejected the respondent-prisoner's interpretation of the PLRA where a prisoner would be able to bring a suit once no administrative remedies are available. *Id.* at 2388. The Court reasoned, without proper exhaustion, prison officials would not be afforded a fair opportunity to consider the grievance. *Id.* Under the respondent-prisoner's approach, a prisoner could intentionally fail to comply with the prison grievance system by delaying until all deadlines expired, file a grievance, have it rejected as untimely, and then proceed directly to federal court. *Id.* The respondent-prisoner's interpretation was the approach taken by the Sixth Circuit prior to *Woodford*. *See Thomas*, 337 F.3d at 733.

In *Jones*, the Supreme Court rejected several procedural rules governing the exhaustion requirement adopted by the Sixth Circuit. The Sixth Circuit required (1) prisoners to allege and demonstrate exhaustion in the complaint, (2) prisoners to sue only those individuals who were identified in the grievance, and (3) courts to dismiss the entire action if the prisoner failed to satisfy the exhaustion requirement as to any claim in his or her complaint. *Jones*, 127 S.Ct. at 914. The Court concluded none of those requirements were supported by the PLRA. *Id.* In rejecting the requirement that a prisoner had to identify any party he or she sought to sue in the initial grievance, the Court concluded the Sixth Circuit's policy lacked a textual basis in the PLRA. *Id.* at 922. The Court examined the MDOC's policies and concluded the Sixth Circuit's procedural hurdle was also not supported by the then applicable prison administrative procedure which only required a prisoner filing a grievance to be as specific as possible. *Id.*

With this as the legal background, this Court turns to the applicable MDOC policy for this case.[4] After *Jones*, the MDOC revised and updated Policy Directive 03.02.130. The Policy Directive (PD) first requires a prisoner to attempt to resolve any grievable issues with the staff member involved before filing a Step I grievance. (¶ R). If unsuccessful, a prisoner may file a Step I grievance within 5 business days after attempting to resolve the issue with the staff member. (¶ X). Unlike the version of the PD at issue in *Jones*, this version of the PD states "[i]nformation provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,

---

[4]The MDOC policy at issue is Policy Directive (PD) 03.02.130. The PD at issue in *Jones* has been superceded several times. Defendants submitted, as part of their attachments, the version which became effective on April 28, 2003. The Magistrate Judge relied on the version which became effective on December 19, 2003. *See* R&R at 7. No party has objected to the application of the December 2003 version. Upon review of the relevant dates, this Court will also rely on the December 19, 2003 version of PD 03.02.130. This Court located the December 2003 version in the joint appendix filed (and referenced in the opinion) in *Jones.*

why, how). Dates, times, places, and names of those involved in the issue being grieved are to be included." (emphasis in original) (¶ T). Once a grievance is filed, the Grievance Coordinator determines if the grievance should be rejected "pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected." (¶ Y). The paragraph continues

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due. . . . The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or rejected for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required by Paragraph AA.

(¶ Y). At the interview, a grievant has an opportunity to explain the grievance more completely so that the respondent can gather any additional information necessary to respond to the grievance. (¶ AA).

The PD provides a number of reasons for which a grievance must be rejected and other reasons for which a grievance may be rejected.[5] A Grievance Coordinator must reject grievances (1) that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest (¶ F), (2) which raise certain non-grievable issues (¶ F 1-3), and (3) that use profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance (¶ G). In contrast, a Grievance Coordinator has discretion to reject a grievance that is (1) vague, illegible, contains multiple unrelated issues or issues raised in another grievance filed by the same prisoner (¶ G1), (2) filed by a prisoner on modified access (¶ G2), (3) filed by a grievant who did not attempt to resolve the issue

---

[5]Portions of the PD use the words "shall be rejected" while other portions use the words "may be rejected."

with a staff member first (¶ G3), or (4) filed in an untimely manner (¶ G4).

The PD provides guidelines, including deadlines, for internal appeals of the denial of a grievance, Step II and Step III. (See ¶¶ DD - II). The entire process from Step I to Step III shall be completed within 90 calendar days, unless an extension is provided. (¶ U). If the prison staff fails to respond to any step in the grievance procedure within the required time frame, the prisoner may forward the grievance to the next stage in the process within 10 business days after the response deadline expires. (¶ V).

Defendants object to the R&R for two reasons. First, Defendants maintain Paragraph T of the MDOC Policy Directive requires Plaintiff to identify all those involved with the grievance in Step I and that failure to do so necessarily means Plaintiff has failed to exhaust his administrative remedies with respect to those individuals. Second, Defendants argue the Magistrate Judge misinterprets *Woodford* because the Supreme Court did not condition a court's conclusion that a grievant failed to exhaust his or her administrative remedies upon the MDOC's rejection of the grievance for procedural defects. In effect, Defendants argue this Court may conclude a grievant did not exhaust his or her administrative remedies even if the MDOC addressed the issue on the merits.

Defendant Thompson raises two objections. First, Defendant Thompson argues the determination of whether a grievant exhausted the available procedures is ultimately determined by a court, not the MDOC. Defendant Thompson maintains the failure to reject a grievance is not an endorsement of its procedural correctness. Defendant Thompson then outlines various practical implications of the Magistrate's conclusion. Defendant Thompson argues *Woodford* stands for the proposition that a prisoner must properly exhaust available administrative remedies so that an

agency can address the issue on the merits. However, the inverse is not a necessary corollary; an agency addressing a grievance on the merits does not equate with exhaustion. Second, Defendant Thompson argues the prevailing law in the Sixth Circuit in 2004, when the grievance was first filed, encouraged resolution of the grievance on the merits rather than procedural dismissals because a prisoner who took a grievance through each step had exhausted the available remedies, "regardless of whether the prisoner complied with the grievance system's procedural requirements." *Thomas*, 337 F.3d at 723.

  This Court agrees with the Magistrate Judge's interpretation of *Woodford*. *Woodford* does not squarely address this particular issue. While stated without acute precision in some respects, the Magistrate Judge's interpretation of *Woodford* is consistent with the doctrine of proper exhaustion, the purposes of the PLRA and the specific provisions of MDOC PD 03.02.130. Under the doctrine, both parties are obligated to raise objections in the administrative proceedings in order for the issue to be properly before a reviewing court. If defendants are correct, how would plaintiff be on notice that he is/was not in compliance with Paragraph T. Here, Defendants would have this Court place the burden of raising objections only on a prisoner and not on the MDOC. That interpretation is inconsistent with the doctrine and is inconsistent with the purpose of the PLRA. The PLRA sought to reduce the quantity of prisoner suits while, at the same time, improving the quality of the suits. The quantity of suits was lowered by requiring administrative exhaustion; prisoners who fail to exhaust available administrative remedies will have their suits summarily dismissed. The quality of suits was raised through proper exhaustion; prison officials investigate those claims that are timely filed and contain sufficient information. When prison officials fail to raise procedural problems during the grievance process, too many suits make it to federal courts on a record where

the procedural problem has not been adequately developed.

Interpreting *Woodford* and the proper exhaustion doctrine to require MDOC to raise the procedural problems during the grievance procedure is consistent with MDOC policy and with the decision in *Jones.* PD 03.02.103 identifies a number of situations in which the Grievance Coordinator *must* reject a grievance. At the same time, the policy also gives a Grievance Coordinator *discretion* to accept a grievance that is vague or not timely filed. The policy does not specifically provide for rejection if a grievant fails to identify the specific defendants, even though Defendants maintain the policy requires grievants to do so in the initial grievance.

A fair interpretation of PD 03.02.103 gives the Grievance Coordinator discretion to accept or reject a grievance that fails to identify specific defendants on the basis of the grievance being vague. Under Paragraph Y, a Grievance Coordinator may respond to a grievance without an interview if only a minimal investigation is needed or if the grievance is rejected for a reason authorized by the policy. The Paragraph further provides that if the Coordinator responds to the merits of the grievance, an interview with the prisoner must be conducted. The purposes of that interview, as provided under Paragraph AA, are to permit the grievant to further explain the problem and to allow the Coordinator to gather any additional information needed to respond.

In the record before this Court, taking facts in a light most favorable to Plaintiff,[6] MDOC exercised its discretion and accepted grievance MTF-04-09-533-12D2. Rather than dismissing the grievance on a procedural issue and allowing Plaintiff to address the procedural concerns, MDOC opted to address the grievance on the merits and interviewed Plaintiff. If MDOC needed additional

---

[6]Defendant moved for summary judgment. The Magistrate Judge outlined the standards for addressing motions for summary judgment. No parties have objected to the those standards and this Court finds them to be a correct statement of the law.

information, such as the names of the individuals who were the subject of the complaint, the policy provides that the interview is the time to gather that information. By accepting the grievance, investigating the claim, <u>and responding on the merits all the way through Step III of the procedure</u>, MDOC cannot now raise a procedural problem for the first time in this Court.

Some language of the Magistrate Judge's R&R (at Page 13) references the defendants' finding that petitioner had "exhausted his medical claim" and later in the same paragraph "found that the inmate satisfied the required critical procedural rules", citing *Woodford*. On this point, the Magistrate Judge's opinion lacks precision which is highlighted in defendants' objection which is well-taken that the agency does not find or rule on "proper exhaustion". The ultimate result does not change.

The gravamen of *Woodford* holds that the dictates of proper exhaustion mean:

1. using all steps that the agency holds out,

2. do[ne] properly, "so that the agency addresses the issues on the merits".

*Woodford*, 126 S.Ct. at 2385. Immediately thereafter, Justice Alito shines guiding light for Courts and its limited role under the umbrella of proper exhaustion: "Courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred <u>against objection made at the time appropriate under its practice.</u> Id [Emphasis supplied.] The "time appropriate" in this case for objection on grounds related to non-compliance with Paragraph T was no later than Step III. Accordingly, the agency having addressed the issues on the merits cannot now be heard to assert that the two prongs of proper exhaustion outlined in *Woodford*, Id at 2325, have not been satisfied.

This interpretation should in no way encourage MDOC to reject grievances for borderline

frivolous reasons, as alleged by Defendant Thompson. Rather, MDOC, much like prisoners are supposed to do, should be both specific and thorough when denying a grievance. If the grievance lacks merit and lacks required information, both should be included as the reason for its denial. Just as prisoners cannot raise new issues in this court that were not raised in the grievance, the MDOC cannot now allege new reasons a grievance could have been rejected or denied. In both situations, the purposes behind the PLRA and the doctrine of proper exhaustion are undermined.

This conclusion finds support in a recently issued opinion and order within this District. In *Johnson v. Beardslee*, No. 06-374, 2007 WL 2302378 (W.D. Mich. Aug. 8, 2007), Judge Quist issued an order adopting a Report and Recommendation and dismissed the prisoner's § 1983 claim. Defendants moved for summary judgment on three grounds: (1) plaintiff failed to properly exhaust his administrative remedies, (2) defendants were entitled to qualified immunity and (3) plaintiff's constitutional rights had not been violated. *Id.* at 2. The Magistrate Judge recommended granting defendants' motion for the third reason. *Id.* at 7. The Magistrate Judge, interpreting *Woodford*, also found plaintiff had properly exhausted his administrative remedies. *Id.* at 3. Specifically, defendants alleged plaintiff did not timely file his grievance. The Magistrate Judge concluded, because MDOC chose to accept the grievance and address it on the merits and did not reject it or deny it as untimely, "no notions of comity are violated if this court does the same." *Id.*

Defendant Thompson's other argument is similarly unpersuasive. Defendant Thompson argues the untimeliness of the grievance was not a material concern when the grievance was filed in 2004. Because *Woodford* overruled *Thomas*, a prisoner must now comply with all grievance policy procedures, including deadlines for filing grievances and appeals. This argument is a red herring. The Grievance Coordinator could have included the procedural deficiencies along with the

reasons for denying the grievance on the merits. The issue is whether Plaintiff exhausted his administrative remedies *when he failed to identify the individuals with whom he had a grievance.* Two district courts, under the old Sixth Circuit policy and ruling on MTF 04-09-533-12D2, concluded Plaintiff had not exhausted his administrative remedies because he failed to name the defendants in that grievance. The courts did not dismiss the claim for failure to timely file the claim. Under the prevailing case law at the time, timeliness was not a barrier to exhausting administrative remedies, but failure to name Defendants was.

Finally, the record is not clear whether Plaintiff timely filed the grievance in the first place or whether MDOC timely responded. In the opinion dismissing the 2006 case, the district judge found it was unclear whether the grievance was timely filed, but that it did not matter under the law of the circuit, citing *Thomas*. The then current policy required a prisoner to attempt, when possible, to resolve the issue with the staff member within two business days after becoming aware of a grievable issue. (¶ R). After attempting to resolve the issue with the staff member, the grievant has five days to file a grievance. (¶ X). The entire grievance procedure, from the filing of the form to through the Step III appeal is supposed to last no longer than 90 days, or 105 days with a 15 day extension.[7] (¶ U). The form that was filed on September 22, 2004 alleged an incident occurred earlier that day.[8] Looking at the facts in a light most favorable to the Plaintiff, there is a genuine

---

[7] In this case, the entire process took almost seven months. The grievance was filed on September 22, 2004. MDOC timely responded to the form on October 6, 2004, which was approved by a reviewer on October 18 and returned to Plaintff on October 19. After Plaintiff filed his Step II appeal on either October 30 or November 2, MDOC did not respond to the appeal until January 9, 2005, 114 days after the grievance was initially filed. Plaintiff immediately filed a Step III appeal, which was not responded to until March 30, 2004, roughly 12 weeks later.

[8] It is unclear what incident occurred on September 22, 2004. The Magistrate Judge did not address the timeliness of the grievance. Defendants allege the form is not timely because it

issue of material fact whether the grievance was timely filed.

IV. CONCLUSION

MDOC did not reject grievance MTF 04-09-533-12D2 for any procedural reasons. The Grievance Coordinator accepted the grievance at Step I and investigated the claim, including an interview with Plaintiff. The purpose of the interview was to allow Plaintiff to further explain the grievance and for the respondent to gather any necessary additional information. The Coordinator responded to the claim on the merits. Further, during Step III of the grievance procedure, MDOC again responded to the grievance on the merits. Although MDOC had three stages in the administrative process at which it could have raised the procedural concerns it now alleges, failure to name Defendants in the grievance and failure to timely file the grievance, it failed to raise those concerns. Defendants cannot now allege Plaintiff did not exhaust his administrative remedies.

ORDER

The Magistrate Judge's Report and Recommendation (Dkt. No. 36) is **ADOPTED OVER OBJECTIONS.** Defendants Nelson and CMS's Motion for Summary Judgment (Dkt. No. 13) is **DENIED.** Defendant's Spitters and Wesneski's Motion for Summary Judgment (Dkt. NO. 16) is

---

references incidents as far back as May 20, 2004. (Reply to Plaintiff's Response to Motion, Dkt. No. 23 at 3).

**DENIED.**  Defendant Vanderark's Motion for Summary Judgment (Dkt. No. 20) is **DENIED.** Plaintiff exhausted his administrative remedies in grievance MTK 04-09-533-12D2.  Plaintiff did not exhaust his administrative remedies in grievances MTF 05-05-210-28AB, MTF 06-09-702-12D14 and MTF 06-05-2709-12D.


Date:   November 1, 2007                                              /s/ Paul L. Maloney
                                                                                     Paul L. Maloney
                                                                                     United States District Judge