UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM DEAN BAKER,

        Plaintiff,                                    Hon. Paul L. Maloney

v.                                                    Case No. 1:07 CV 4

DONNA VANDERARK, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #58). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motion be **granted** and Plaintiff's action dismissed.

**BACKGROUND**

The following allegations are contained in Plaintiff's complaint. Plaintiff suffered an abdominal injury on or about May 20, 2004. Subsequent x-rays of Plaintiff's abdomen were interpreted by Defendant Spitters as "normal." On an unspecified date "sometime between" June 1, 2004, and September 8, 2004, Plaintiff was examined by Defendant Spitters, who diagnosed Plaintiff with "a torn lower abdominal muscle."

On September 26, 2004, Plaintiff was again examined by Defendant Spitters. Plaintiff reported that his abdominal injury had worsened and that he was experiencing severe pain. Plaintiff informed Spitters that he "thought he had a hernia." Defendant Spitters "denied it was a hernia."

On October 9, 2004, Plaintiff was "bent over in pain," at which point he was transported to a local hospital where a CT scan was performed. The results of the CT scan were "normal."

On October 30, 2004, Plaintiff reported that his "side has become even more painful." On an "unknown date" (apparently subsequent to this report) Plaintiff was examined by Defendant Wesneski, who "could not diagnose injury." Plaintiff continued to experience abdominal pain regarding which he "wrote multiple med-kites." Plaintiff was examined on "various occasions" by Defendant Vanderark, who was unable to diagnose the cause of Plaintiff's pain. On April 29, 2005, Plaintiff was examined by Defendant Vanderark, who was again unable to diagnose the cause of Plaintiff's symptoms.

On June 13, 2005, Plaintiff reported to prison officials that he was experiencing "intense pain" in his "chest and side." Plaintiff was transported to a local hospital where he participated in a CT scan, the results of which were "negative." On an "unknown date" between June 13, 2005, and July 14, 2005, Plaintiff was examined by Defendant Nelson, who informed Plaintiff that he "may have a strange type of hernia." Defendant Nelson recommended that Plaintiff be examined by a surgeon. This request was denied, however, by "an unknown party."

Plaintiff initiated the present action on January 3, 2007, alleging that the following individuals and entities were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights: (1) Donna Vanderark; (2) Daniel Spitters; (3) Jeremy Wesneski; (4) William Nelson; (5) Helen Thompson; and (6) Correctional Medical Services, Inc. Plaintiff seeks injunctive and monetary relief. Plaintiff's claims against Defendant Thompson were dismissed on February 5, 2008. The remaining Defendants in this action now move for summary judgment. For the reasons discussed herein, the Court recommends that Defendants' motion be granted and Plaintiff's action dismissed.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative

evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.       Correctional Medical Services**

Plaintiff has named Correctional Medical Services, Inc. (CMS) as a defendant in this matter. Nonetheless, Plaintiff has failed to assert any allegations of wrongdoing against CMS itself. Instead, it appears that Plaintiff has named CMS as a defendant in this matter simply because it employs several of the individual defendants.

However, CMS is not vicariously liable for the actions of its employees. *See Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996) ("A defendant cannot be held liable under section 1983 on a respondent superior or vicarious liability basis") (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). To establish liability against CMS, Plaintiff must demonstrate that CMS had a

"policy, practice or custom that resulted in the injury." *Moreno v. Metropolitan General Hospital*, 210 F.3d 372, 2000 WL 353537 at *2 (6th Cir., Mar. 28, 2000); *see also*, *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001) (same).

Plaintiff has not alleged that his injuries were caused by any policy, practice, or custom implemented by CMS. Moreover, Plaintiff has alleged no facts which can reasonably be interpreted as alleging such. Accordingly, the Court recommends that Correctional Medical Services is entitled to summary judgment.

**II.        Individual Defendants**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official

>knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

In support of their motion for summary judgment, Defendants Vanderark, Spitters, Wesneski, and Nelson have submitted copies of Plaintiff's medical records. (Dkt. #64). A review of this evidence reveals the following.

On May 20, 2004, Plaintiff was examined by James Barber, R.N. *Id.* at 13. Plaintiff complained that he was experiencing "severe" pain in his "flank." The results of a physical examination revealed "no abnormal findings." *Id.* The following day Plaintiff participated in an urinalysis examination, the results of which were "negative." *Id.* at 14.

On May 27, 2004, Plaintiff was examined by Physician's Assistant Heidi Jackson. *Id.* at 33-35. Plaintiff complained of left-sided abdominal pain. *Id.* at 33. X-rays of Plaintiff's abdomen revealed no evidence of "obstructive process." *Id.* at 64. Plaintiff was diagnosed with G.E.R.D. and irritable bowel disease, for which medications were prescribed. *Id.* at 33-35.

On June 1, 2004, Plaintiff was examined by Physician's Assistant Spitters. *Id.* at 65-66. Plaintiff reported that he was experiencing abdominal "discomfort." *Id.* at 65. Defendant Spitters observed that Plaintiff was able to sit, stand, and move with "relative ease" without evidence of

restriction. The results of a physical examination were unremarkable. *Id.* Plaintiff was prescribed pain medication. *Id.* at 65-66.

On July 6, 2004, Plaintiff was examined by Holly Smyth, R.N. *Id.* at 15. Plaintiff reported that he was experiencing constant pain in his left abdomen. *Id.* An examination of Plaintiff's abdomen was "normal." *Id.* at 16. The results of an urinalysis examination were likewise negative. *Id.* Plaintiff was prescribed medication and instructed to maintain fluid intake. *Id.* at 17.

On July 7, 2004, Plaintiff was examined by Defendant Spitters. *Id.* at 68-69. Plaintiff complained of abdominal pain. *Id.* at 68. The results of a physical examination revealed "mild" pain of the abdominal muscle wall, but were otherwise unremarkable. *Id.* Plaintiff was diagnosed with lower abdominal wall muscle pain, for which medication was prescribed. *Id.* at 69.

On September 14, 2004, Plaintiff was examined by nurse Barber. *Id.* at 18. Plaintiff reported that he was continuing to experience "left sided abdomen pain that is getting worse." Plaintiff reported that his pain was exacerbated by exercise. Upon examination, the nurse observed "abdomen flat and no abnormalities palpated." *Id.*

On September 29, 2004, Plaintiff was examined by Defendant Spitters. *Id.* at 70-71. Plaintiff reported that he was suffering from a hernia. *Id.* at 70. Plaintiff entered the examination room walking "slow" and "bent over." However, Defendant Spitters observed that upon exiting the examination Plaintiff's gait was "100%" within normal limits. The results of a physical examination were unremarkable with no evidence of a hernia. *Id.* The following day, Plaintiff injured his left knee while playing football. *Id.* at 20-21.

On October 8, 2004, Plaintiff was examined by nurse Barber. *Id.* at 22-23. Plaintiff reported that he was suffering from a "lump" in his abdomen. *Id.* at 22. An examination of Plaintiff's

abdomen revealed no evidence of a lump. *Id.* The following day Plaintiff was examined by Dr. Matthew Chase. *Id.* at 76-78. The results of a physical examination were unremarkable. *Id.* at 76-77. Plaintiff participated in a CT scan of his abdomen and pelvis, the results of which were "unremarkable." *Id.* at 63. X-rays of Plaintiff's abdomen likewise revealed no evidence of abnormality. *Id.* at 62. Dr. Chase found no basis for Plaintiff's symptoms. *Id.* at 77.

On October 11, 2004, Plaintiff was examined by Physician's Assistant Vanderark. *Id.* at 25. Plaintiff complained of pain in his abdomen, knees, and chest. Defendant Vanderark diagnosed Plaintiff with irritable bowel syndrome, hepatitis C, and a left knee strain. Plaintiff was prescribed medication and scheduled to participate in a hepatic function test. *Id.*

On November 5, 2004, Plaintiff was examined by Defendant Vanderark. *Id.* at 36-37. Palpation of Plaintiff's abdomen produced "moderate" pain, but the results of the examination were otherwise unremarkable. *Id.* at 36-37. Plaintiff was diagnosed with G.E.R.D., irritable bowel syndrome, and abdominal wall strain. *Id.* at 37. Plaintiff was prescribed medication and instructed on proper exercise and diet. *Id.* at 37.

On January 16, 2005, Plaintiff was examined by nurse Barber. *Id.* at 26. Plaintiff reported that he was continuing to experience left-sided abdominal pain. Barber noted that recent x-rays of Plaintiff's abdomen were "normal." Barber discerned no cause for Plaintiff's complaints and wondered whether Plaintiff's symptoms were the result of "prison stress." *Id.*

On April 29, 2005, Plaintiff was examined by Defendant Vanderark. *Id.* at 103. Plaintiff complained of "continued abdominal pain," but palpation of his abdomen revealed no evidence of abnormality. *Id.*

On May 26, 2005, Plaintiff was examined by Defendant Vanderark. *Id.* at 105. Following an examination, Vanderark concluded that Plaintiff may have suffered a muscle tear. She instructed Plaintiff to apply a warm compress to the area and engage in a "series of gradual stretches to attempt to rehab the tissue." *Id.*

On June 13, 2005, Plaintiff was examined by Charlotte Burdette, R.N. *Id.* at 27-28. Plaintiff reported that he was experiencing "constant" pain in the right lower portion of his abdomen. *Id.* at 27. Plaintiff exhibited "moderate" distress on palpation of his abdomen. *Id.* at 28. Nurse Burdette referred Plaintiff to the emergency room for "further evaluation." *Id.* At the hospital, Plaintiff was examined by Dr. Brian Smith. *Id.* at 74-75. The results of a physical examination were unremarkable. *Id.* at 74. Plaintiff also participated in a CT scan of his appendix, the results of which were "normal." *Id.* at 61. Plaintiff was diagnosed with a muscle strain of the abdominal wall. *Id.* at 74.

On November 28, 2005, Plaintiff was examined by Defendant Vanderark. *Id.* at 29-32. Plaintiff reported that he was experiencing left-sided abdominal pain. *Id.* at 29. The results of a physical examination were unremarkable. *Id.* at 29-30. Plaintiff was prescribed medication and instructed on proper diet and exercise. *Id.* at 30-31.

On September 25, 2006, Plaintiff was examined by Defendant Nelson. *Id.* at 10. Plaintiff reported that he was experiencing "persistent" left-sided abdominal pain. Plaintiff was able to sit, ambulate, and bend without difficulty or hesitation. Dr. Nelson discerned no cause for Plaintiff's symptoms. *Id.*

In addition to this medical evidence, each of the individual defendants have submitted affidavits. In his affidavit, Defendant Nelson asserts that he examined Plaintiff on June 21, 2005. (Dkt. #58, Exhibit A). Defendant Nelson asserts that his examination of Plaintiff revealed no evidence of

physical abnormality that would explain Plaintiff's alleged symptoms. Defendant Nelson further reported that Plaintiff's "physical responses were not consistent with pain." Nonetheless, Defendant Nelson recommended that Plaintiff be examined by Defendant Wesneski. *Id.*

In his affidavit, Defendant Wesneski asserts that he examined Plaintiff on November 18, 2004, "following a request for my consultation to determine whether [Plaintiff] was a candidate for surgery." (Dkt. #58, Exhibit B). Dr. Wesneski "found no hernia, no mass, and no other abnormality which would require surgery." *Id.* The affidavits submitted by Defendants Spitters and Vanderark simply reiterate the medical evidence detailed above. (Dkt. #58, Exhibits C and D).

In response to the evidence advanced by Defendants, Plaintiff has submitted a single medical report. (Dkt. #65, Exhibit A). According to this *undated* report, Plaintiff was examined in an emergency room by Dr. Jason Jaronik. On examination, Dr. Jaronik discerned "a bulge in the left inguinal area." The doctor reported that his "impression" of Plaintiff's condition was that he was suffering from abdominal pain and a "direct inguinal hernia." Dr. Jaronik recommended to Plaintiff that he follow up with "the on call surgeon. . .for evaluation." Plaintiff has also referenced a medical report that he previously submitted to the Court. According to this report, Plaintiff was examined by Dr. Mian Qayyum on May 15, 2007. (Dkt. #35, Exhibit A). The results of a physical examination were unremarkable, but the doctor questioned whether Plaintiff was suffering from a left inguinal hernia. *Id.*

Plaintiff's claim that Defendants denied him medical treatment is without merit. As detailed above, Defendants (and others) treated Plaintiff on numerous occasions. Plaintiff does not dispute this, but instead challenges the accuracy of their respective diagnoses as well as the efficacy of their treatment decisions. As Plaintiff asserts in his complaint he allegedly suffered a "denial of access to competent medical personnel." (Dkt. #1 at 4).

Plaintiff may disagree with Defendants' treatment decisions and, furthermore, may even consider such decisions to constitute negligence. However, to the extent that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendants are entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) ("negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference").

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #58), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 16, 2008                  /s/ Ellen S. Carmody
                                     ELLEN S. CARMODY
                                     United States Magistrate Judge